**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

James Schwier,

Plaintiff,

v.

Nanocopoeia, LLC; PXMMI, LLC; the David Frauenshuh Revocable Trust dated March 16, 1990; Flex Pharma, LLC and David R. Frauenshuh,

Defendants.

Case No. 0:26-cv-4108

**COMPLAINT**
**JURY TRIAL DEMANDED**

---

Plaintiff James Schwier ("Schwier"), for his Complaint against Nanocopoeia, LLC ("Nanocopoeia"), the David Frauenshuh Revocable Trust dated March 16, 1990 (the "Frauenshuh Trust"), PXMMI, LLC ("PXMMI"), Flex Pharma, LLC ("Flex Pharma"), and David R. Frauenshuh, in his individual capacity ("Frauenshuh") (collectively, "Defendants"), states and alleges:

## PARTIES

1. Schwier is an individual and a resident of Florida.

2. Nanocopoeia is or was a Minnesota limited liability company with a registered address in Ramsey County, Minnesota. Schwier was designated as Nanocopoeia's manager in corporate filings made by one or more Defendants with the Minnesota Secretary of State.

3. PXXMI is or was a Minnesota limited liability company with a registered address in Hennepin County, Minnesota.

4. Flex Pharma is a Minnesota limited liability company with a registered address in Hennepin County, Minnesota.

5. The Frauenshuh Trust is, upon information and belief, a trust organized under the laws of the State of Minnesota.

6. Frauenshuh is an individual who, upon information and belief, resides in Hennepin County, Minnesota.

**JURISDICTION AND VENUE**

7. This Court possesses jurisdiction pursuant to 28 U.S.C. § 1332, because Schwier and the Defendants are residents of different states and the amount in controversy exceeds $75,000.

8. Venue is appropriate in this judicial district because one or more Defendants reside in the State of Minnesota and a substantial part of the events giving rise to Schwier's claims occurred in Minnesota.

**INTRODUCTION**

9. This lawsuit addresses Defendants' unlawful and continuing efforts to capitalize upon Schwier's expertise and instrumental role in the technology and product development and licensing of a lucrative pharmaceutical product, Phyrago®, while avoiding their obligations to compensate Schwier once Phyrago® received FDA approval and Defendants thereafter entered a commercial agreement as a direct result of Schwier's long and dedicated work.

10. In furtherance of their ongoing and illegal scheme, Defendants engineered a sham receivership once a Phyrago® commercial agreement was imminent. During the

"receivership," Nanocopoeia was nominally placed under the purported control of a receiver while the company's assets—predominantly the licensing rights to Phyrago®—were transferred first to PXMMI, then to Flex Pharma, all under the control and direction of Frauenshuh. Indeed, Frauenshuh unilaterally formed PXMMI—on *the day after* a presentation to Nanocopoeia's board regarding the imminent licensing of Phyrago®.

11. In even plainer terms, Defendants "induced" (their own word) Schwier to devote his professional life to developing an FDA-approved proprietary technology, developing advanced oncology products, then consummating a commercial agreement for the sale of Phyrago®, then purported to: a) fire Schwier when a commercial agreement was imminent; b) engineer a fraudulent receivership; c) form different corporate entities under the direction and control of Frauenshuh; d) transfer assets (particularly the Phyrago® commercial agreement) with no or pretextual consideration; and e) illegally and with forethought denied Schwier any compensation or his agreed-upon share of profits from the business venture.

12. Schwier seeks damages and equitable relief for Defendants' breaches of fiduciary duties, conflicts of interest, misrepresentations, breaches of contract, and calculated breakdown of the parties' legal relationship. Defendants are required to account to Schwier and to hold as trustees any property, profit, or benefit derived from the Phyrago® commercial agreement. Schwier further seeks imposition of a constructive trust to hold all profits from the actual and potential revenue derived from the sale of Phyrago®, as well as an equitable buyout for fair value of his share in the partnership and limited liability company.

## FACTS

13. Schwier possesses a wealth of experience in the development and licensing of pharmaceutical products, including the painstaking and often complex FDA approval process. By contrast, Defendants had little or no such experience prior to their association with Schwier.

14. On or about August 21, 2026, Schwier and Michael Graves (acting on behalf of Nanocopoeia) ("Graves") executed an Employment Agreement (the "Employment Agreement") and the Nanocopoeia, LLC Profits Interest Grant Agreement (the "Profit Agreement").

15. The Employment Agreement provided that, *inter alia*:

a) Schwier would fulfill the role of Chief Operating Officer of Nanocopoeia;

b) Schwier would receive base compensation of $400,000, with an annual bonus equal to thirty percent (30%) of his base salary based upon performance metrics to be established;

c) Nanocopoeia would reimburse Schwier for all reasonable business expenses; and

d) Schwier would receive a "Severance Pay Entitlement" equal to twenty-four months' salary, payment of accrued and unused vacation time, and payment of Nanocopoeia's contribution toward Schwier's coverage under the company's health plan, provided that Schwier's employment was not terminated for "Good Cause."

A true and correct copy of the Employment Agreement is appended hereto as **Exhibit A**.

16. Frauenshuh further agreed to increase Schwier's salary to $500,000.

17. On the same day, Schwier and Nanocopoeia executed the Profits Agreement "to induce [Schwier] to serve the Company through the grant of certain membership

interests representing the right to share in the future profits of the Company." A true and correct copy of the Profits Agreement is appended hereto as **Exhibit B**.

18. The Profits Agreement granted Schwier 34,364 Class D-2 units of Nanocopoeia, representing roughly 3% of the outstanding membership units of Nanocopoeia, all subject to anti-dilution rights.

19. Schwier's units vested over a three (3) year period. At all times material herein, Schwier's membership units were fully vested.

20. Frauenshuh further agreed and represented that Schwier's ownership percentage would be increased from roughly 3% to 6%.

21. To again induce Schwier to lend his expertise to what turned into a highly profitable venture, Frauenshuh (on behalf of the Frauenshuh Trust) executed a "Guaranty of Severance Payments" (the "Guaranty"). A true and correct copy of the Guaranty is appended hereto as **Exhibit C**.

22. The Guaranty required *inter alia* that the Trust would pay the severance amounts due under the Employment Agreement, subject to conditions regarding a change in control of Nanocopoeia or whether a "Frauenshuh Member" was no longer a direct or indirect "beneficial owner" of 50% or more of the combined voting power of equity securities of Nanocopoeia.

23. In reliance upon this aptly characterized "induce[ment]," Schwier faithfully and very ably guided the development of Nanocopoeia's proprietary technology, including Nanocopoeia's drug development pipeline including Phyrago®, to an impending commercial agreement. His efforts were impeded late in the process by Frauenshuh, who

chose to restrict funding at a critical juncture, deferred necessary expenses (euphemistically termed a "spend reduction"), falsely provided assurances of continued investment, and in practice created the false or deceptive narrative of a cash crisis as a predicate to the sham and unlawful transactions summarized herein.

24. Phyrago®, an improved version of Bristol-Myers' best-in-class leukemia drug (Sprycel®), was approved by the FDA in December 2023. A negotiated licensing agreement with Partner Therapeutics ("PTX") fell though in May 2024 and Graves and Schwier quickly pivoted and devoted their efforts toward a range of advantageous business opportunities, specifically including a licensing agreement with Handa Pharmaceuticals, LLC ("Handa").

25. Notably, Graves and Schwier initiated the eventual transaction with Handa through their own personal contacts with Handa's leadership team. The parameters of a transaction with Handa included significant eight-figure upfront payment and a double-digit royalties split as well as Nanocopoeia's expansion from drug development into additional supply chain capabilities that supported Handa's USA commercial needs, all to the lucrative financial benefit of Defendants.

26. On July 30, 2024, Graves presented to the Nanocopoeia Board, updating the status of Handa negotiations as well as approving a formal banker process re-engagement for licensing development support. Nanocopoeia's Board formally approved this action the same day.

27. On September 3, 2024, Graves presented another status update to Nanocopoeia's Board regarding Handa's timeframe in which to address an IPO matter, as

well as a banker process progress update. Schwier similarly presented regarding the company's operational and financial status (i.e., continuing financial obligations, deferment actions and status, funding requirement projections) during the same meeting. Conspicuously, the Board never gave notice of imminent corporate dissolution or sale.

28. On September 16, 2024, Graves again presented licensing status updates to Nanocopoeia's Board. During the same meeting, Schwier outlined to the Board the specific steps necessary to reduce Nanocopoeia's expenses to an even more extreme level than had been implemented in order to satisfy Frauenshuh's January 2023 orders to reduce spending and defer liability payments—all to ensure that Frauenshuh's claimed funding constraints were adequate to minimally maintain and sustain operations pending Handa's IPO matter resolution. Schwier further detailed a plan that specifically outlined the rationale, steps, personnel, timing, and funding required to maintain and sustain the Phyrago® asset for the time necessary to consummate a Handa licensing agreement. In the literal words of Matt Frauenshuh, the Board responded, "we'll get back to you."

29. On the following day, Frauenshuh incorporated PXMMI. Frauenshuh did not provide notice of the incorporation to Schwier or Graves, both of whom continued to faithfully perform their responsibilities.

30. On September 24, 2024, via email time-stamped 2:24 p.m. CST, Frauenshuh and Nanocopoeia purported to summarily terminate Schwier's employment and status as an owner and install David Frauenshuh as a company officer. As of that time, no change in control of Nanocopoeia had occurred.

31. Later the same day (at 3:05 p.m.), Frauenshuh (on nominal behalf of Nanocopoeia) signed an Assignment for the Benefit of Creditors (the "Receivership Assignment"). *See In re Nanocopoeia, LLC*, Ct. File No. 62-CV-24-5879, filed in Hennepin County District Court. Immediately after Frauenshuh signed the Receivership Agreement, the Court-authorized receiver, Lighthouse Management, together with Frauenshuh's employment law attorney, entered the Nanocopoeia facility and immediately discharged all remaining employees without explanation.

32. Frauenshuh formally retained a personal friend, Kendall Qualls, to negotiate on behalf of Lighthouse Management regarding the Phyrago® commercial agreement. Within one week, Lighthouse Management—conspicuously funded through PXMMI/Frauenschuh loans—offered temporary employment contracts to the Nanocopoeia employees previously named in Schwier's September 16, 2024 Phyrago® asset maintenance plan. Those employees thus continued to perform the same or substantially the same activities as they had prior to their own abrupt termination.

33. On November 15, 2024, Lighthouse Management Group submitted a Final Report and a proposed Order Discharging the Assignee and Termination of the Assignment for the Benefit of Creditors. By that date, the receivership had been in place for less than two months.

34. By letter dated December 10, 2024, Lighthouse Management represented to PXMMI that "[a]s you know, the Assignor [Nanocopoeia] requests to terminate the [Assignment for Benefit of Creditors]." Neither the letter, nor the broader receivership court file, give any reason why Frauenshuh placed Nanocopoeia in receivership for less

than two months before requesting that the Assignment for Benefit of Creditors be terminated.

35. During the receivership, PXMMI funded contracts with former Nanocopoeia's employees, as well as assigning Mr. Qualls to lead the drug development operations, even awarding Mr. Qualls a very substantial compensation package and bonus to maintain the Phyrago® asset and conclude licensing negotiations that had been brought to imminent conclusion by Schwier. Notably, Mr. Qualls had no drug technology, drug development, or specialty pharmaceutical operations expertise.

36. On December 31, 2024, Lighthouse Management filed a Supplemental Final Report in the receivership action. The Supplemental Final Report represents that "[l]oan proceeds of $1,110,000 were received from PXMMI, LLC to preserve the value of Assignment Assets." The same day, Nanocopoeia/PXMMI signed a licensing agreement with Handa for the sale of Phyrago®.

37. On March 31, 2025, PXMMI filed an amendment with the Minnesota Secretary of State in order to change its business name to Flex Pharma.

38. Flex Pharma operates in substance and in fact as the continuation of Nanocopoeia, including the same employees, the same business purposes, and the same assets—including the commercial agreement for the sale of Phyrago®.

39. Despite the highly profitable commercial agreement developed and brought to fruition by Schwier, Defendants conspired to deprive Schwier of his right to severance and his 3% share in the profits of the business transactions and the ongoing enterprise.

40. In February 2025, Schwier (through his attorney) gave notice of his right to contractual severance, health benefits contributions, and business expenses, as plainly required by the Employment Agreement.

41. In turn, Defendants denied Schwier's demand, quarreling that "[o]n December 31, 2024, Nanocopoeia and PXXMI, LLC entered into an agreement whereby Nanocopoeia conveyed, assigned, and transferred its 'entire right, title and interest in and to all of the Collateral' to PXMMI 'in partial satisfaction of the Outstanding Obligations.'" In more linear and truthful terms, Defendants argued that Frauenshuh—the majority member of Nanocopoeia—invested money in the entity, thereafter formed PXMMI under the same ownership (but without Schwier), and was thus entitled to operate PXMMI without regard to its obligations to Schwier.

42. The representation that Nanocopoeia "entered an agreement" with PXMMI on December 31, 2024 is either false or materially misleading. In reality, Defendants incorporated PXMMI on September 17, 2024, the day after Graves and Schwier presented to the Board regarding the spending reductions mandated by Frauenshuh and the steps necessary to maintain the Phyrago® as a business asset until a licensing agreement with Handa could be consummated. Moreover, PXMMI funded Nanocopoeia's business operations during the receivership proceeding.

43. Even if the representation that Nanocopoeia "entered an agreement" with PXMMI was factually correct, the purported transaction occurred after Defendants purported to terminate Schwier's status as an employee and owner. Consequently, the

liability of the Frauenshuh Trust under the Guaranty became fixed prior to any insider agreement between Nanocopoeia and PXMMI.

44. Schwier declined to accept Defendants' demand that he forgo all compensation and his rights as an owner and partner in the parties' venture. To the extent that mediation was required as a condition precedent to filing suit, Schwier demanded mediation by correspondence dated April 23, 2026, June 3, 2026, and July 16, 2026. Defendants did not act upon Schwier's demands for mediation. Consequently, Schwier has exhausted all remedies, if any, that were conditions precedent to commencing this action.

**COUNT I**
**BREACH OF CONTRACT**
**(NANOCOPOEIA, PXMMI, FRAUENSHUH TRUST, AND FLEX PHARMA)**

45. Schwier restates the foregoing paragraphs as though fully set forth herein.

46. The Employment Agreement, the Profits Agreement, and the Guaranty are valid and binding contracts.

47. Nanocopoeia, PXMMI, and Flex Pharma breached the Employment Agreement by, among other things, failing to pay Schwier contractual severance, the value of health benefit insurance, accrued PTO, bonuses, and business expenses.

48. Nanocopoeia, PXMMI, and Flex Pharma breached the Profits Agreement by, among other things, failing to pay Schwier his rightful and ongoing percentage of the profit derived from the commercial agreement regarding Phyrago® and subsequent profits from technology developed during Schwier's tenure.

49. The Frauenshuh Trust breached the Guaranty by, among other things, failing to pay Schwier the amounts due to him under the Employment Agreement.

50. Defendants' failures to pay Schwier are willful and not the result of mistake or inadvertence.

51. PXMMI and Flex Pharma are the successors to and/or legal alter egos of Nanocopoeia. Without exclusion, PXMMI and Flex Pharma expressly or impliedly agreed to assume the debts of Nanocopoeia, any transaction involving the corporate Defendants amounted to a consolidation or merger, PXMMI and Flex Pharma were the continuation of Nanocopoeia for the reasons summarized above, and any transaction between the corporate Defendants was entered into fraudulently (as also summarized above) in order to escape liability to Schwier. Consequently, all corporate Defendants remain jointly and severally liable to Schwier for the breaches of the Employment Agreement and the Profits Agreement.

52. As a direct and proximate cause of Defendants' breaches of contract, Schwier has been damaged in an amount in excess of $75,000 to be proven at trial.

**COUNT II**
**BREACH OF THE OBLIGATIONS OF GOOD FAITH AND FAIR DEALING**
**(NANOCOPOEIA, PXMMI, FRAUENSHUH TRUST, AND FLEX PHARMA)**

53. Schwier incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

54. Defendants owed and continue to owe duties of good faith and fair dealing to Schwier in their performance of the Employment Agreement, the Profits Agreement, and the Guaranty.

55. Defendants violated their duties of good faith and fair dealing by, among other things:

a) Purporting to fire Schwier without cause;

b) Refusing to pay Schwier contractual severance, the value of health benefit insurance, accrued PTO, bonuses, and business expenses;

c) Forming and operating PXMMI for the purpose, in whole or in part, of depriving Schwier of his rights to contractual severance, the value of health benefit insurance, business expenses and ongoing profits derived from the sales of Phyrago®;

d) Placing Nanocopoeia into a nominal "receivership" for the purpose, in whole or in part, of depriving Schwier of his rights under the Employment Agreement and the Profits Agreement;

e) Firing and then re-hiring Nanocopoeia employees in an effort to obscure the fact that PXMMI and Flex Pharma are legal successors to Nanocopoeia and thus liable for all debts owed to Schwier;

f) Operating and continuing to operate PXMMI and Flex Pharma as successors to and/or alter egos of Nanocopoeia without complying with Schwier's contractual rights;

g) Depriving Schwier of his interests in the ongoing profits derived from the parties' business venture, including profits related to the commercial agreement regarding Phyrago;

h) Failing to pay Schwier the amounts due under the Guaranty despite the fact that Defendants' themselves contend that a purported "change in control" occurred after Schwier's unlawful termination without cause.

56. As a direct and proximate cause of Defendants' breaches of their duties of good faith and fair dealing, Schwier has been damaged in an amount in excess of $75,000 to be proven at trial.

**COUNT III**
**FRAUDULENT TRANSFERS**
**(NANOCOPOEIA, PXMMI, FLEX PHARMA, AND FRAUENSHUH)**

57. Schwier incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

58. At all material times herein, Nanocopoeia, PXMMI, and Flex Pharma owed and continues to owe a debt to Schwier, including (without limitation), contractual severance, the value of health benefits, the reimbursement of business expenses, accrued PTO, bonuses, and Schwier's right to share in the profits derived from the sales of Phyrago® and other development products derived during and by virtue of Schwier's business activities.

59. Defendants Nanocopoeia, PXMMI, Flex Pharma, and/or Frauenshuh fraudulently transferred the assets of Nanocopoeia with the actual intent to hinder, delay, or defraud Schwier by, among other acts:

a) Representing that Nanocopoeia was cash poor in the timeframe immediately preceding the asset commercial agreement regarding Phyrago;

b) Forming PXMMI on the day after Graves and Schwier presented to the board regarding a licensing deal for Phyrago®;

c) Placing Nanocopoeia into a sham receivership, as summarized *supra*;

d) Funding Nanocopoeia's and/or PXMMI's business operations while Nanocopoeia was in the pretextual receivership;

e) Purporting to transfer all of Nanocopoeia's assets to PXMMI and Flex Pharma at an indeterminate point in time.

60. The same Defendants engineered the transfer of Nanocopoeia's assets to PXMMI and Flex Pharma—successor entities owned in majority part either directly or indirectly by Frauenshuh—without Nanocopoeia receiving a reasonably equivalent value in exchange for its transfer of assets while:

a) Nanocopoeia was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction; or

b) Nanocopoeia intended to incur or believed or reasonably should have believed that it would incur debts beyond its ability to pay as they became due.

61. As a direct and proximate cause of Defendants' fraudulent transfers, Schwier has been damaged in an amount in excess of $75,000 to be proven at trial.

**COUNT IV**
**CIVIL CONSPIRACY**
**(ALL DEFENDANTS)**

62. Schwier incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

63. Defendants have formed a common design to injure Schwier as set forth above in the foregoing allegations.

64. Defendants had a common knowledge and express and/or tacit understanding that wrongs would be committed upon Schwier.

65. Defendants acted in furtherance of their common design to injure Schwier through, among other things, coordinating and implementing the above-referenced unlawful acts.

66. As a direct and proximate cause of Defendants' conduct, Schwier has been damaged in an amount in excess of $75,000 to be proven at trial.

**COUNT V**
**EQUITABLE RELIEF**
**(ALL DEFENDANTS)**

67. Schwier incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

68. Based on the above-described acts and omissions, Schwier is entitled to equitable relief under Minnesota common law and Minn. Stat. Ch. 323A, including to an equitable buyout of his interest in the partnership for its undiscounted fair value and to compensate him for his interest in the business operations going forward.

69. Schwier is entitled to a constructive trust with respect to any and all funds or assets misapplied or misappropriated from the partnership for themselves (or entities owned by them).

70. Schwier is entitled to a detailed audit and accounting with respect to any and all transactions between and among Defendants (and/or related persons or entities) as it relates to the partnership, with all such funds returned or credited in connection with the valuation of the partnership and an award of damages or imputed dividends.

**COUNT VI**
**CORPORATE SUCCESSOR LIABILITY**
**(PXMMI AND FLEX PHARMA)**

71. Schwier incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

72. Defendants PXMMI and Flex Pharma are legal successors to Nanocopoeia and, therefore, remain liable to Schwier.

73. PXMMI and later Flex Pharma expressly or impliedly agreed to assume the debts of Nanocopoeia. This agreement is evidenced by, among other acts, the fact that PXMMI paid some business obligations of Nanocopoeia while the company was in the sham receivership.

74. Any transaction between Nanocopoeia and PXMMI and/or Flex Pharma amounted to a consolidation or merger of the entities, even if not formally structured as such. The functional merger is evidenced by, among other things: a) the continuity of management, personnel, physical location, assets, and general business operations; b) the continuity of ownership; c) the immediate or near-immediate cessation of business by Nanocopoeia as soon as legally possible; and d) PXMMI's and Flex Pharma's assumption of the ordinary obligations for the continuation of Nanocopoeia's business operations.

75. PXMMI and Flex Pharma acted and continue to act as the continuation of Nanocopoeia's business operations.

76. As addressed in the allegations set forth above, Nanocopoeia, PXMMI, and Flex Pharma engaged in fraudulent transfers of Nanocopoeia's assets, including the commercial agreement related to Phyrago®.

77. Schwier is entitled to a declaration and judgment that any and all debts owed to him by Nanocopoeia are the joint and several obligations of PXMMI and Flex Pharma.

**COUNT VII**
**BREACH OF FIDUCIARY DUTY**
**(FRAUENSHUH)**

78. Schwier restates the foregoing paragraphs as though fully set forth herein.

79. Nanocopoeia and its successor entities are an association of two or more people to carry on as co-owners of a business for profit. Accordingly, Nanocopoeia and its successors PXMMI and Flex Pharma are a partnership.

80. Even if the Nanocopoeia, PXMMI, and Flex Pharma are deemed to be limited liability companies, Frauenshuh owed fiduciary duties to Schwier.

81. As partners and/or co-owners in Nanocopoeia, Frauenshuh owes and owed fiduciary duties to Schwier including duties of loyalty to hold as trustee for Nanocopoeia any property, profit, or benefit derived by the partners in the conduct or partnership business or derived from the use of partnership property—including all business opportunities derived from a commercial agreement regarding Phyrago®.

82. As partners and/or co-owners in Nanocopoeia, Frauenshuh owes and owed fiduciary duties to Schwier, including a duty of care in the conduct of partnership business to refrain from engaging in reckless conduct, intentional misconduct, or a knowing violation of law.

83. PXMMI and Flex Pharma are business opportunities derived exclusively or predominantly from the commercial agreement for Phyrago® developed by Schwier before his unlawful termination.

84. Among other things, Frauenshuh breached his fiduciary duties to Schwier by:

a) Failing to act in a fair and honest manner toward Schwier, including without limitation terminating Schwier's association with Nanocopoeia, engaging in a sham receivership, and transferring Nanocopoeia's assets to other Defendants;

b) Forming PXMMI and Flex Pharma for his own benefit and intentionally excluding Schwier from having involvement with either entity;

c) Causing PXMMI and Flex Pharma to use the business assets of Nanocopoeia, including the commercial agreement for Phyrago®, in furtherance of a business venture that excluded Schwier;

d) Diminishing the value of Nanocopoeia by placing the company into receivership and transferring its assets;

e) Causing PXMMI and Flex Pharma to use confidential and trade secret information of Nanocopoeia, including (without limitation) its licensing opportunities regarding Phyrago®;

f) Using Nanocopoeia's assets for his own benefit to the exclusion of his partner, Schwier;

g) Attempting to oust Schwier from the business opportunity when Nanocopoeia's was on the precipice of consummating a lucrative business opportunity developed by Schwier; and

h) Placing his own personal interest first rather than acting in the best interests of the partnership.

85. Frauenshuh's breaches of his fiduciary duty are unlawful acts and unfairly prejudicial and damaging to Schwier.

86. Schwier is entitled to damages in an amount in excess of $75,000 to be proven at trial.

87. Schwier is entitled to equitable relief under Minnesota common law and Minn. Stat. Ch. 323A, including but not limited to an equitable buyout of his interest in the

partnership for its undiscounted fair value to compensate him for his interest in business opportunities going forward from which he has been unlawfully excluded.

## PRAYER FOR RELIEF

WHEREFORE, Schwier prays that this Court enter judgment upon Complaint against the Defendants, jointly and severally, as follows:

1. An award of damages in an amount in excess of $75,000, in an amount to be proven at trial;

2. Temporary and permanent equitable relief as deemed appropriate during the course of litigation, including an accounting and constructive trust over all funds, assets and business opportunities usurped by Defendants from Nanocopoeia and the parties' partnership, to include all profits from the sale of Phyrago®;

3. An order for a buyout of Schwier's interests in the partnership for its undiscounted fair value;

4. An award of costs, disbursements, prejudgment interest, attorney's fees, statutory penalties as may be applicable, and expenses incurred herein; and

5. For such other relief as the Court finds appropriate.

**HELLMUTH & JOHNSON, PLLC**

Dated: September 23, 2026

By: */s/ John J. Steffenhagen*

John J. Steffenhagen, ID #195947
Steven R. Liening, ID #0402303
8050 West 78th Street
Edina, Minnesota 55439
Telephone: (952) 941-4005
Facsimile: (952) 941-2337
Email: jsteffenhagen@hjlawfirm.com
sliening@hjlawfirm.com

**ATTORNEYS FOR PLAINTIFF**